IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

BECKLEY DIVISION

COVOL FUELS NO. 4, LLC,

        Plaintiff,

v.                                        CIVIL ACTION NO.   5:12-cv-04138

PINNACLE MINING COMPANY, LLC,

        Defendant.

**MEMORANDUM OPINION AND ORDER**

The Court has reviewed the *Defendant Pinnacle Mining Company, LLC's Daubert Motion to Exclude the Report and Testimony of J. Steven Gardner* (Document 239), the *Memorandum in Support* (Document 240), and the *Plaintiff's Memorandum in Opposition* (Document 250).  For the reasons set forth herein, the Court finds that the motion should be denied.

**INTRODUCTION**

The facts and procedural history of this case have been set forth repeatedly by this Court in prior orders, and thus, the Court will provide only a brief summary of the procedural posture and the relevant issues in this litigation.  The Plaintiff brought suit in this Court on August 7, 2012, alleging that the Defendant had breached the terms of a Coal Purchase and Refuse Recovery Agreement (CPRRA) between the parties, dated February 15, 2008. (Pl.'s Complaint, at ¶35-39.) The Plaintiff alleged that the CPRRA required the Defendant to provide "access" to coal refuse within an impoundment pond adjacent to an underground coal mine operated by the Defendant in Wyoming County, West Virginia.  (*Id*.)   The Plaintiff also alleged that the Defendant breached

the implied covenant of good faith and fair dealing. (*Id*.) The Defendant moved for summary judgment, and this Court issued a *Memorandum Opinion and Order* (Document 153) on April 9, 2014, granting summary judgment in favor of the Defendant on all claims.

The Plaintiff appealed, and on March 3, 2015, the Fourth Circuit issued its *Opinion* (Document 177). The Fourth Circuit found there were "genuine issues of material fact" with respect to the Plaintiff's claim for breach of contract, and that Section 18(ii) of the CPRRA,[1] read alone and in the context of other provisions in the CPRRA, was susceptible to multiple meanings. (4CCA Opinion, at 17.) The Fourth Circuit, therefore, remanded the case to this Court for a trial to determine whether Section 18(ii) of the CPRRA required the Defendant to affirmatively lower the water level in the impoundment pond. The Fourth Circuit also determined that there were "factual issues" concerning whether Section 7 of the CPPRA[2] required the Defendant to comply with the terms of federal Mine Safety and Health Administration (MSHA) and West Virginia Department of Environmental Protection (DEP) mine plans. (*Id*. at 21-22.) Finally, the Fourth Circuit found that the Defendant was not entitled to summary judgment on the Plaintiff's claim for breach of the implied covenant of good faith and fair dealing. (*Id*. at 23.)

---

[1] Section 18 of the CPRRA provides, in relevant part, that "[the Defendant] hereby agrees to permit [the Plaintiff] to operate the Processing Facility for recovery of the Refuse Material at the Refuse Site. [The Defendant] shall provide to [the Plaintiff]: (i) a mutually agreeable area in the immediate vicinity of each fines pond that is adequate for Covol to install and maintain its Processing Facility and equipment for recovery of Refuse Material; (ii) any right-of-way reasonably needed by [the Plaintiff] to transport the Refuse Material from the ponds to the processing plant; and (iii) ingress and egress over the property of Pinnacle or its lessors to support the activities described in this Agreement. (CPPRA, at 18, att'd as Exh. 2 to Def. Answer.) (Document 21-2).

[2] Section 7 of the CPRRA states, in relevant part, that "[i]n performing their respective obligations under [the CPRRA], [the Plaintiff] and [the Defendant] shall comply in all respects with and undertake all responsibilities under all applicable statutes, laws, ordinances, enactments, rules, regulations, orders, decrees, directives, mandates, or other similar requirements of any federal, state or local government, agency, court or public authority …" (CPRRA, at 4.)

In accordance with the Fourth Circuit's *Opinion*, this Court entered an Order (Document 184) lifting the stay of this action on April 9, 2015. The remaining issues before the Court are (1) whether the Defendant breached Section 18(ii) of the CPRRA, (2) whether Section 7 of the CPRRA required the Defendant to comply with MSHA and DEP mine plans, and (3) whether the Defendant breached the implied covenant of good faith and fair dealing.

Following remand, the parties completed discovery. Trial is scheduled for February 28, 2016. The Defendant filed the present motion on October 5, 2015, and the Plaintiff responded on October 19, 2015. The motion is ripe for review.

## APPLICABLE LAW

The admissibility of expert testimony in federal court is governed by Federal Rule of Evidence 702. Rule 702 provides that a district court shall permit a witness "who is qualified as an expert" on the basis of "knowledge, skill, experience, training or education" to testify under certain circumstances. Fed. R. Evid. 702. Specifically, Rule 702 permits experts to testify where the expert's "scientific, technical, or other specialized knowledge" will assist a juror in "understand[ing] the evidence" or "determin[ing] a fact in issue," the testimony is "based on sufficient facts or data," and the expert applied "reliable principles and methods" to the facts of the case. *Id.* The Fourth Circuit considers Rule 702 to be a liberal standard of admissibility. *See, e.g.*, *Kopf v. Skrym*, 993 F.2d 374, 377 (4th Cir. 1993) ("Rule 702 is broadly interpreted, and helpfulness to the trier of fact is its touchstone.") Expert testimony is therefore presumed to be "helpful" unless it "concerns matters within the everyday knowledge and experience of a lay juror." *Id.*, citing *Persinger v. Norfolk & Western Railway Co.*, 920 F.2d 1185, 1188 (4th Cir. 1990).

3

The Supreme Court has positioned trial courts as the "gatekeeper" for expert testimony, and instructed trial courts to ensure the proffered testimony is both reliable and "relevant to the task at hand." *Daubert v. Merrill Dow Pharm., Inc.*, 509 U.S. 579, 597 (1993); *Kumho Tire v. Carmichael*, 526 U.S. 137, 147 (1999); *Cooper v. Smith & Nephew*, 259 F.3d 194, 199 (4th Cir. 2001). Under Federal Rule of Evidence 104(a), when a party challenges the admissibility of expert testimony, the party which proffers the testimony bears the burden of establishing, by a preponderance of the evidence, that the evidence is admissible. Fed. R. Evid. 104(a); *see also Daubert*, 509 U.S. at 592 n.10.

In assessing an expert's reliability, the trial court may consider the factors set forth by the Supreme Court in *Daubert*: whether the expert's theory or technique can be tested, whether the technique has been subject to peer review and publication, the known or potential rate of error, and whether the theory or technique is generally accepted in the scientific or technical community. *Kumho Tire*, 526 U.S. at 149-150, citing *Daubert*, 509 U.S. at 592-594. However, these factors are not exclusive. Courts have flexibility in assessing the reliability of expert testimony, and the analysis must be "tied to the facts" of the case at hand. *Kumho Tire*, 526 U.S. at 150. Thus, a trial court has "leeway" to "decid[e] in a particular case how to go about determining whether particular expert testimony is reliable." *Id*. at 152. In the Fourth Circuit, a proffered expert must possess specialized knowledge, skills or education which are "not in possession of the jurors." Even if the proffered testimony appears "shaky," the Supreme Court has instructed trial courts to consider that "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596.

Similarly, when assessing the relevance of expert testimony, the proffered scientific or technical testimony must "fit" the case, by having a "valid … connection to the pertinent inquiry" before the Court. *Daubert*, 509 U.S. at 591. If the expert testimony "relate[s] to any issue in the case," the testimony is relevant. *Id*.

## DISCUSSION

The Defendant seeks to exclude the report and testimony of the Plaintiff's proffered expert, J. Steven Gardner. In so moving, the Defendant makes three core arguments. First, the Defendant argues that the opinions offered by Mr. Gardner in four reports provided by the Plaintiff to the Defendant do not "fit" the case, because these opinions (a) presume wrongdoing by the Defendant, and (b) rely on inadmissible legal conclusions beyond the scope of the issues before the Court at this juncture of the litigation. (Def. *Daubert* Motion, at 7-8.) Second, the Defendant argues that Mr. Gardner's opinions as to certain factual issues in this case are unreliable, because they are based on "unsupported and speculative assertions." (*Id*. at 10.) Third, the Defendant claims that Mr. Gardner's opinions as to the parties' obligations under the CPRRA are inadmissible conclusions of law which must be excluded from the evidence at trial. (*Id*. at 12.)

*A) Scientific, Technical or Other Expertise or Knowledge*

The Defendant does not overtly contest the credentials or expertise of Mr. Gardner. Nevertheless, in keeping with the Court's gatekeeping function under Rule 702, *Daubert* and the subsequent case law, the Court will briefly discuss this issue. In reviewing the reports drafted by Mr. Gardner and proffered by the parties in their briefings on this motion, and in reviewing his sworn deposition, the Court finds that Mr. Gardiner possesses technical expertise and knowledge which go above and beyond that which could reasonably be expected from a lay juror.

5

The Plaintiff has proffered that Mr. Gardiner was retained for three reasons: (1) to assess the veracity of the Plaintiff's claim that it was denied access to the coal contained in the impoundment based on the Defendant's failure to lower the water level therein; (2) to prepare an "independent verification" of the coal volume in the impoundment, and "project [the Plaintiff's] potential production" from the impoundment, and (3) determine whether the Plaintiff's expenditures during the life of the CPRRA were reasonable. (Pl.'s Mem. in Opposition, at 3.) To fulfill these expectations, Mr. Gardner is able to rely on over "30 years of experience in the environmental engineering profession." (*Id*.) He is a licensed professional engineer who specializes in environmental assessments, remediation, and related land-use issues. (*Id*. at 2.) Perhaps most significantly, Mr. Gardner is currently President of the Society for Mining, Metallurgy & Exploration, an organization with over 15,000 members in over 100 countries focused on the mining and mineral production industries. (*Id*. at 3.) It is therefore indisputable that Mr. Gardner possesses the type of expertise contemplated by Rule 702 and *Daubert*, and that he is qualified to provide expert testimony on issues germane to this litigation.

*B) Reliability*

The Defendant seeks to exclude Mr. Gardner's opinions and reports as unreliable under Rule 702 because "they are based on unsupported and speculative assertions," and because "his methodology is flawed." (Def. Mot. to Exclude, at 10.) Specifically, the Defendant argues that Mr. Gardner failed to follow accepted methods for determining the volume of coal (100,000 tons per year) which the Plaintiff could have expected to recover from the impoundment pond, had the contract proceeded as planned. (*Id*.) The Defendant also argues that while Mr. Gardner testified in detail at his deposition about the due diligence process for a mining acquisition, and the relevant

6

steps thereto, he failed to follow the same steps—such as examining the available reserves, operations and sales, and the condition of the recovery operation—in calculating the amount of coal the Plaintiff could be expected to recover. (*Id.*) As a result, the Defendant claims that Mr. Gardner failed to assess the efficiency of the Plaintiff's operations at the Defendant's impoundment pond, failed to determine "how things were going" at the pond "between April of 2008 and 2011," and "ignored the fact that [the Plaintiff] never actually produced" the projected amount of coal during the life of the CPRRA. (*Id*. at 10-11.) The Defendant also points out that at his deposition, Mr. Gardiner "merely verified whether [the Plaintiff's] estimate regarding the volume … of coal was reasonable," and testified that he was unaware of the current contents of the impoundment pond. (*Id*.) Thus, the Defendant argues that "Mr. Gardner did not employ the same level of rigor" expected of someone in his field, and failed "to tie [the Plaintiff's] failure to achieve the volumes he projects" to the Defendant's "failure to lower the water level in the impoundment." (*Id*.)

Mr. Gardner's testimony and the content of his reports as to this issue are admissible under Rule 702 and *Daubert*. The Plaintiff has provided sufficient evidence for the Court to conclude that Mr. Gardner's methods were reliable. Thus, Mr. Gardner's conclusions, and the weight the jury should accord thereto, are more appropriately attacked through cross-examination of Mr. Gardner at trial and through the presentation of contrary evidence and testimony.

*C) Relevance*

The Defendant also challenges the admissibility of Mr. Gardner's reports and testimony on relevancy grounds. First, the Defendant argues that Mr. Gardner's opinions "do not fit this case," because they "presume wrongdoing." (Def. Mot. to Exclude, at 6.) The Defendant points the

7

Court to Mr. Gardner's deposition testimony, where he stated that "his conclusions are premised on the assumption that [the Defendant] is liable" for making upgrades to its coal processing plant, that the upgrade "reduced the quality of the [coal] fines pumped to the impoundment," rendering the Plaintiff's business plan uneconomical, and that the Defendant failed to honor its obligation to inform the Plaintiff about the upgrades. (*Id.* at 7.) The Defendant also argues that such testimony relates "solely to [the Plaintiff's] now-defunct fraudulent concealment and negligent misrepresentation claims".

In response, the Plaintiff argues that, "[l]ike all experts retained to testify for [a] plaintiff in a breach of contract case," Mr. Gardner may "assume that the defendant has breached the contract." (Pl.'s Mem. in Opposition, at 8.) Regarding the Defendant's argument that Mr. Gardner's testimony about the upgrades is only relevant to now-defunct claims, the Plaintiff argues that the probative value of this evidence for its breach of contract claims must be determined by the jury. (*Id*. at 9.) The Plaintiff also argues that this evidence will be presented as evidence that the Defendant "frustrated [the Plaintiff's] reasonable expectations under the CPRRA," and also probative evidence of damages. (*Id*.)

The Court finds that the testimony is admissible. The Plaintiff is correct that its expert may presume wrongdoing in an action for breach of contract. It is the responsibility of the Defendant to test the accuracy of the expert's conclusions through cross-examination and the presentation of contrary evidence to the jury. Moreover, the Court agrees with the Plaintiff that Mr. Gardner's testimony concerning the Defendant's processing plant upgrades "permeate[s] many aspects of this case." To the extent that such testimony may be irrelevant, the Defendant retains the procedural right to challenge the admissibility of such statements at trial.

The Defendant makes a second relevancy argument that Mr. Gardiner's findings, in his reports and in his deposition, are legal conclusions which do not "fit" the issues in this case. (Def. Mot. to Exclude, at 8.) This argument is equally suspect. The Defendant goes to great lengths to castigate Mr. Gardner for offering legal conclusions on obligations imposed by sections of the CPRRA which are beyond the scope of the litigation at this stage, and for failing to thoroughly "read" the Fourth Circuit's Opinion remanding this case. (*Id*. at 8-9.) While the Defendant's claims as to the relevance of Mr. Gardner's conclusions on certain sections of the CPRRA may ultimately have merit, the appropriate forum for addressing these grievances is through evidentiary objections and cross-examination at trial, rather than a pre-trial motion to exclude the entirety of Mr. Gardner's testimony. Moreover, the Court finds no merit in the Defendant's claim that because Mr. Gardner "fail[ed] to account for this Court's, or the Fourth Circuit's rulings," his opinions rest on "assumptions which are no longer viable." The Court certainly will not condemn Mr. Gardner for failing to read the Fourth Circuit's opinion. Mr. Gardner is not counsel to the Plaintiff nor a licensed attorney and cannot be reasonably expected to account for the Fourth Circuit's legal conclusions in providing expert testimony. Nor does his failure to account for this Court's rulings, and those of the Fourth Circuit, in producing his reports and testifying under oath, inherently negate the validity of his conclusions such that they should not be presented to the jury. Mr. Gardner's obligation is to offer conclusions based on facts and circumstances, rather than on law.

More specifically, the Defendant has purposefully excerpted brief segments of Mr. Gardner's deposition testimony in a futile attempt to persuade the Court that Mr. Gardner reached his conclusions about the Defendant's obligations by relying on sections of the CPRRA which are

no longer relevant to this litigation, including Section 30 and Section 8. To borrow the Plaintiff's language, such selective "cherry picking" of Mr. Gardner's testimony in no way supports the exclusion of his testimony altogether.

The Court's review of Mr. Gardner's reports and his deposition testimony suggests that Mr. Gardner relied on many sections of the CPRRA, including those which remain relevant in this litigation, to reach his conclusions. The Court is certainly not persuaded by the Defendant's claim that Mr. Gardner's deposition provides *per se* evidence that he relied on now-moot sections of the CPRRA to reach his conclusions. As the Plaintiff observes, the Defendant's counsel, after extracting from Mr. Gardner a statement that he relied, at least in part, on Section 8 to determine that the Defendant had an obligation to lower the water level in the impoundment, "moved on before Mr. Gardner could raise any other CPRRA provisions." (Pl.'s Mem. in Opposition, at 11 n. 4.)

Moreover, the case law relied upon by the Defendant is inapplicable. In *Silicon Knights, Inc. v. Epic Games, Inc.*, 2011 WL 6748518 (E.D.N.C. Dec. 22, 2011), the court excluded the expert testimony of a witness who had calculated an estimate of damages based on the successful resolution of all of the Plaintiff's claims. Because the court had previously disposed of several of the Plaintiff's claims on summary judgment, the court found that the expert's testimony was no longer relevant or appropriate for presentation to the trier of fact. *Silicon Knights,* 2011 WL 6758518, at *17. Here, the heart of Mr. Gardner's testimony concerns the parties' respective obligations under the CPRRA and the projected volume of coal which the Plaintiff could have expected to produce from the impoundment, not the specific damages to which the Plaintiff is entitled. *Silicon Knights,* therefore does not require the exclusion of Mr. Gardner's testimony.

10

The Defendant's reliance upon *Pharmanetics, Inc. v. Aventis Pharm., Inc.*, 2005 WL 6000369, is similarly misplaced. In *Pharmanetics*, the court also excluded a damages expert, on the grounds that the calculation of damages was no longer valid given the Court's dismissal of certain claims by the Plaintiff, which the expert had relied upon in calculating damages. *Pharmanetics*, 2005 WL 6000369, at *10. The Fourth Circuit indicated that a jury could find that the Defendant breached its contract by lowering the water level in the impoundment. Thus, Mr. Gardner's testimony is relevant to damages resulting from that alleged breach of contract. Furthermore, as the Court has noted repeatedly, even if the Defendant may ultimately have grounds to exclude certain portions of Mr. Gardner's testimony based on his reliance on now-moot sections of the CPRRA, the appropriate forum for addressing these grounds is through evidentiary objections at trial, rather than through an overbroad attempt to exclude the entirety of Mr. Gardner's testimony.

*D) Legal Conclusions*

Having exhausted the traditional grounds for challenging the admissibility of expert testimony under *Daubert* – reliability and relevance – the Defendant throws a proverbial 'Hail Mary' by arguing that many of Mr. Gardner's statements in his deposition reflect "legal conclusions." (Pl.'s Mot. to Exclude, at 12.) The Defendant begins its argument by setting forth the well-settled principle in the Fourth Circuit that experts may not provide opinions on "what the law means." (*Id.*, citing *United States v. Wilson*, 133 F.3d 251, 265-66 (4th Cir. 1997).) The Defendant then argues that certain statements from Mr. Gardner's reports, including his assertions about the rights and duties created by the CPRRA, contain terminology which has a "specialized and distinct meaning in the law." (*Id.* at 13.) The terms specifically cited by the Defendant

11

include "right and obligation," "contractual obligation," "operational partnership," "reliance," and "good faith and fair dealing." (*Id.*)

Mr. Gardner obviously may not testify or offer evidence as to what the law is, either in West Virginia or in any other jurisdiction. Nor can Mr. Gardner instruct the jury as to the content of the law, or what verdict to reach. Such statements would not only be an impermissible assumption of the role of the Court, but would not "assist the trier of fact" in resolving relevant issues under Rule 702. The Fourth Circuit has consistently held that it does not help the jury for an expert to give testimony that "states a legal standard or draws a legal conclusion by applying law to the facts," *United States v. McIver*, 470 F.3d 550, 562 (4th Cir. 2006). This is because it "supplies the jury with no information other than the witness's view of how the verdict should read." *Id.*, quoting WEINSTEIN'S FEDERAL EVIDENCE § 704.04[2][a] (2d ed.2003). Examples of language which courts in the Fourth Circuit have excluded on these grounds include "extortion," "deadly force," "fiduciary obligation," and "unreasonably dangerous." *Id.*, quoting *DiBella v. Hopkins*, 403 F.3d 102, 121 (2d Cir.2005); *Miller v. Clark County*, 340 F.3d 959, 963 n. 7 (9th Cir.2003); *Christiansen v. Nat'l Sav. & Trust Co.*, 683 F.2d 520, 529 (D.C.Cir.1982). Under *United States v. Barile*, 286 F.3d 749 (4th Cir. 2002), trial courts must apply a two-part test to such statements. Courts must determine if words used by a proffered expert have a specialized meaning in the law, then assess whether the evidence may still be admissible, because it will assist the jury. *Barile*, 286 F.3d at 760.

The Court's review of the reports Mr. Gardner prepared, and his sworn deposition testimony, suggests that his testimony should be admissible. The Defendant acknowledges Mr. Gardner's statement that his opinions were based on his own interpretation of the CPRRA, rather

than any legal standard. (*Id*. at 13.) Nor has Mr. Gardner in any way suggested that his conclusions were based on the law which shall govern this case. Focusing more narrowly on Mr. Gardner's language, the Court finds that terms such as "right," "contractual obligation," "operational partnership," and "reliance," while subject to a legal meaning, are also common in the vernacular, particularly in regard to business transactions between sophisticated parties. The Court finds nothing problematic in Mr. Gardner's use of such terms to describe his assessment of the CPRRA. It would be extremely difficult for Mr. Gardiner to opine on any aspect of the CPRRA without using some terminology which might also carry a legal meaning. The Court finds that Mr. Gardner's use of these terms is entirely distinct from terms such as "extortion," "deadly force," or "fiduciary relationship," which have no common usage in the vernacular and only relate to a legal obligation. The Court also agrees with the Plaintiff that even if these terms were to have a separate legal meaning apart from their use in the common vernacular of business transactions, Mr. Gardner's testimony would nonetheless be admissible, as it would assist the jury in "understand[ing] how separate businesses operating shared facilities under a single mine plan typically achieve the objectives of the parties." (Pl.'s Mem. in Opposition, at 17.) Even terms such as "good faith" and "fair dealing," which precisely parallel the language of implied contractual duties in West Virginia law, are commonly used to describe business practices, and cannot be excluded at this time on the basis argued by the Defendant. However, the Court again reiterates that the Defendant retains the procedural right to challenge the admissibility of such statements on evidentiary grounds at trial.

## CONCLUSION

Wherefore, after careful consideration, the Court **ORDERS** that the *Defendant Pinnacle Mining Company, LLC's Daubert Motion to Exclude the Report and Testimony of J. Steven Gardner* (Document 239) be **DENIED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and to any unrepresented party.

ENTER: February 4, 2016

IRENE C. BERGER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF WEST VIRGINIA